UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re Beverley Jackson, | Case No. 08-61931 |
| | Chapter 7 |
| Debtor. | Hon. Marci B. McIvor |
| _____/ | |

Michael Stevenson, Trustee,

        Plaintiff,

v.                                                                      Adv. Pro. No. 09-5490

Mario Genna, Kimberly Genna
Layla Genna, Sebastian Genna, and
The Law Office of Siciliano, Mychalowych,
Van Dusen and Fuel, P.C.

        Defendants.
_____/

## **OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

      This matter is before the Court on the parties' Cross-Motions for Summary Judgment. Plaintiff seeks judgment on a four-count adversary complaint to recover alleged preferential transfers made to defendants Mario Genna, Kimberly Genna, Layla Genna and Sebastian Genna (collectively the "Genna Defendants"), and The Law Office of Siciliano, Mychalowych, Van Dusen and Feul P.C. ("the Law Firm Defendant"). For the reasons stated in this Opinion, the Court grants Plaintiff's Motion for Summary Judgment against the Genna Defendants (Counts I and II of the Complaint) and grants the Law Firm Defendant's Motion for Summary Judgment against the Plaintiff (thereby dismissing Count III of the Complaint). Count IV is granted in part and denied in part.

## I. Facts

On April 16, 2008, the Genna Defendants obtained a state court judgment against debtor Beverley Jackson in the amount of $388,260. The Genna Defendants were represented by the Law Firm Defendant. In an effort to collect on the judgment, the Law Firm Defendant garnished several of Debtor's accounts. As a result of the garnishment, on July 1, 2008, CUNA Mutual Group turned over funds in the amount of $166,298.57. A check was issued to the Genna Defendants and sent to the Law Firm Defendant. The Law Firm Defendant deposited those funds into its client trust account. Other garnishments resulted in an additional $2,260.81 paid over to the Genna Defendants.

In August, 2008, Debtor's attorneys in the state court litigation and the Law Firm Defendant engaged in electronic mail discussions regarding payment of the judgment and the scheduling of a creditor's exam. On August 25, 2008, one of Debtor's attorneys sent a letter via facsimile to an attorney at the Law Firm Defendant, indicating that his client, debtor Beverly Jackson, was being represented by an attorney who specialized in bankruptcy "for her impending bankruptcy." The next day, August 26, 2008, Debtor's bankruptcy attorney, sent an email to an attorney at the Law Firm Defendant, indicating that he had spoken to with his client regarding the filing of a chapter 7 bankruptcy. The email makes it clear that, at that point, Debtor had not firmly decided to file a bankruptcy petition. Two days later, on August 28, 2008, Debtor's bankruptcy attorney informed an attorney at the Law Firm Defendant by e-mail, that his client was "not interested in settling the lawsuit and intends to [file] a Chapter 7 bankruptcy case." Debtor's bankruptcy attorney further indicated that he would be meeting with his client "early next

week to sign the pleading and will file thereafter." In an e-mail from the Law Firm Defendant to Debtor's bankruptcy attorney dated August 27, 2008, the Law Firm Defendant's attorney acknowledged that the filing of a bankruptcy would render a creditor's exam moot, and indicated that the Law Firm Defendant was still interested in resolving outstanding issues.

On August 27, 2008, the state court issued an order approving distribution of judgment proceeds, the Genna Defendants had received as a result of the garnishments of Debtor's accounts. The Law Firm was awarded "$73,647.97 from the total of the judgment proceeds currently retained in the Siciliano Mychalowych VanDusen and Feul, PLC (SMVF") client trust account . . . in payment of SMVF's costs and fees to date." Two days later, on August 29, 2008, the state court entered an order approving distribution of the remaining judgment proceeds held by The Law Firm Defendant ($109,911.53) to the state court plaintiffs (i.e. the Genna Defendants).

As of September 1, 2008, Debtor had not yet filed for bankruptcy. On September 8, 2008, Mr. Van Dusen e-mailed Mr. Glusac stating that the Law Firm Defendant was still interested in settling matters. Two days later, on September 10, 2008, Debtor filed a voluntary chapter 7 bankruptcy petition.

On July 21, 2009, the Trustee filed an Adversary Complaint against the Genna Defendants. The Complaint, which was amended twice and is now brought against both the Genna Defendants and the Law Firm Defendant, asserts four causes of action: (1) avoidance of a preferential transfer to the Genna Defendants pursuant to 11 U.S.C. § 547(b); (2) recovery of the avoidable transfer to the Genna Defendants pursuant to 11 U.S.C. § 550(a); (3) recovery of avoided transfers against the Law Firm defendant

3

pursuant to 11 U.S.C. § 550(a)(2); and (4) disallowance of all claims pursuant to 11 U.S.C. § 502(d) and (j). The Trustee filed the present Motion for Summary Judgment on February 16, 2010. The Law Firm Defendant filed its Motion for Summary Judgment on March 2, 2010.

The Trustee asserts that he can recover the payment made to the Genna Defendants because the payment was a preferential transfer under § 547(b) and the Genna Defendants were initial transferees under § 550(a)(1). The Genna Defendants did not file a response to the Trustee's Motion.

The Trustee asserts that he can recover payment made to the Law Firm Defendant by the Genna Defendants because the initial payment was a preferential transfer under § 547(b) and the Law Firm Defendant is an "intermediate transferee" pursuant to § 550(a). The Law Firm Defendant's Response asserts: (1) that the Trustee fails to state a claim upon which relief can be granted, and (2) even if the Trustee can show that the attorney fees the Law Firm Defendant received from the Genna Defendants is a payment from funds which are now recoverable as a preferential transfer, the Law Firm Defendant took the payment for value, in good faith and without knowledge of the voidability of the transfer. The Law Firm Defendant argues that 11 U.S.C. § 550(b)(1) precludes recovery by the Trustee.

## II. Jurisdiction

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under Title 11 or in a case under Title 11. 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

4

### III. Standard for Dismissal

The Law Firm Defendant's brief requested both summary judgment under Fed. R. Civ. P. 56 and dismissal under Fed. R. Civ. P. 12 (b)(6). Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings in bankruptcy through Fed. R. Bankr. P. 7012(b) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint.  Having reviewed the Complaint and the record, the Court finds that Plaintiff's Complaint states a claim upon which relief can be granted and that summary judgment is the appropriate form of relief.

### IV. Standard for Summary Judgment

Fed. R. Civ. P. 56(c) sets forth the standard for summary judgment.  Fed. R. Civ. P. 56 is incorporated into bankruptcy law by way of Fed. R. Bankr. P. 7056(c). Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The Court finds that there are no disputes about the material facts.  The issues

before the Court are: (1) whether the garnishment recovery received by the Genna Defendants is a preferential payment under 11 U.S.C. § 547, and (2) whether the payments by the Genna Defendants to the Law Firm Defendant (in payment of the Law Firm's legal fee) is an avoidable transfer under 11 U.S.C. § 550(a)(2).

## V. Analysis

### A. Preferential Transfers under 11 U.S.C. § 547(b)

The Trustee alleges that the payments made to the Genna Defendants, pursuant to the garnishments from Debtor's accounts in July and August, 2008, are preferential transfers pursuant to 11 U.S.C. § 547(b). That section states:

> Except as provided in subsections (c) and (I) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made –
>
>     (A) on or within 90 days before the date of the filing of the petition; or
>
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if–
>
>     (A) the case were a case under chapter 7 of this title;
>
>     (B) the transfer had not been made; and
>
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

6

In order to establish a preferential transfer, the Trustee must prove that each element of § 547(b) has been satisfied. *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 706 F.2d 171, 172 (6th Cir.), *cert. denied sub nom.*, *Ranier & Assoc. v. Waldschmidt*, 464 U.S. 935 (1983). Once a preference is established, the burden shifts to the defendant to assert statutory defenses to the preference action– defenses which may allow a defendant to retain the preferential payment. (*See* 11 U.S.C. §§ 547(c)(1) - (c)(9)).

In the present case, the Genna Defendants did not file a response to the Trustee's Motion for Summary Judgment. It is undisputed that the funds the Genna Defendants received pursuant to the state court judgment constitute a preferential transfer. The payments were received within 90 days of the filing of Debtor's bankruptcy petition, the payments were applied to antecedent debt, the Debtor is presumed to be insolvent (11 U.S.C. § 547(f)) and, as general unsecured creditors, the Genna Defendants received more from the garnishment than they would receive had they not successfully garnished Debtor's funds. Therefore Plaintiff's Motion for Summary Judgment is granted as to Counts I and II of the Complaint. Judgment is awarded against the Genna Defendants in the amount of the preferential transfer of $168,559.38.

## B. Liability of a Transferee under 11 U.S.C. § 550

It is undisputed that the Law Firm Defendant was paid their attorney fee out of the garnishments proceeds the Genna Defendants obtained from Debtor. Having established that the Genna Defendants are liable for a preferential transfer, the Trustee argues that the Law Firm Defendant is liable to the estate for the fees they received as an immediate transferee of the funds received by the Genna Defendants.

7

11 U.S.C. § 550 determines from whom a trustee may recover property when a transfer has been avoided. It states in relevant part:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
>
> > (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> >
> > (2) any immediate or mediate transferee of such initial transferee.
>
> (b) The trustee may not recover under section (a)(2) of this section from–
> > (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
> >
> > (2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550(a) and (b). Section 550(a) allows a trustee to recover property from the initial transferee, or any "immediate" or "mediate" transferee of the initial transferee. Section 550 (b) prevents the trustee from recovering an avoided transfer from a immediate transferee who takes for value, in good faith and without knowledge of the voidability of the transfer avoided.[1] In the present case, the Genna Defendants were immediate transferees of the funds garnished from Debtor. The Law Firm Defendant

---

[1] As explained by the Sixth Circuit Court of Appeals, "[a]n initial transferee is one who receives money from a person or entity later in bankruptcy, and has dominion over the funds. A mediate or immediate transferee is simply one who takes in a later transfer down the chain of title or possession." *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 974 F.2d 712, 722 (6th Cir. 1992).

8

asserts that it is an immediate transferee protected under § 550(b) because it received its attorney fee for services performed, in good faith, and without knowledge of the avoidability of the transfer avoided.

With respect to the first element of § 550(b)(1), that is receiving the payment for value, the state court order regarding payment of fees to the Law Firm Defendant makes it clear that the payment made to the Law Firm Defendant was made in exchange for legal services rendered to the Genna Defendants in the state court case against Debtor. Thus, there is no dispute regarding the value element of § 550(b)(1).

The second element of a defense under § 550(b)(1), that is "good faith", is not defined in the bankruptcy code, nor has the term been clearly defined by the Sixth Circuit Court of Appeals. The Sixth Circuit has stated in an unpublished opinion:

> Courts and commentators have struggled to define the term "good faith" as used in § 550(b). Some have concluded that the term is synonymous with 'without knowledge of the voidability,' so that the Code's use of both creates a redundancy. *See Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 897 (7th Cir.1988). First Independence points to *IRS v. Nordic Village, Inc. (In re Nordic Village)*, 915 F.2d 1049, 1056 (6th Cir.1990), *rev'd on other grounds*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), which indicated that "good faith" involved a lack of "actual notice" of voidability. *Id*.

*First Independence Capital Corp. v. Merrill Lynch Bus. Fin. Services, Inc. (In re First Independence Capital Corp.)*, 2006 WL 1342789 (6th Cir. 2006). The court in *SKK Liquidation Trust v. Green & Green, LPA (In re Spinnaker Industries, Inc.)*, 328 B.R. 755 (S.D. Ohio 2005), quoting the court in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988) stated that "[a] court may infer the lack of good faith if 'the recipient of a voidable transfer. . . possessed enough knowledge of events to induce a reasonable person to investigate [ ]' the potential voidability issue."

9

*In re Spinnaker*, 328 B.R. at 769. More generally, as noted in *Collier on Bankruptcy*,

> The Code does not define 'good faith,' but courts have long defined this term under prior law. As one court, quoting a classic treatise, defined it: 'The question is solely whether the grantee knew or should have known that he was not trading normally but that on the contrary, the purpose of the trade, so far as the debtor was concerned, was the defrauding of his creditors.

5 *Collier on Bankruptcy*, ¶ 550.03[2] at 550-23 (Alan N. Resnick, *et. al.* , eds. 15th *ed.*)(citation omitted).

The Bankruptcy Code and its legislative history are also silent as to the definition of the third element of a defense under § 550(b), that is taking a transfer "without knowledge of the voidability of the transfer avoided." According to *Collier on Bankruptcy*,

> The language appears to be derived from section 4-609(b)(1) of the Commission's bill [The Commission on the Bankruptcy Laws of the United States, which filed a draft statute with Congress in 1973], and was included as surplusage to illustrate a transferee that could not be in good faith. The Commission intended the standard to mean 'if the transferee knew facts that would lead a reasonable person to believe that the property [transferred] was recoverable.'

5 *Collier on Bankruptcy*, ¶ 550.03[3] at 550-24. Consistent with this language, the Sixth Circuit Court of Appeals, in *Internal Revenue Service v. Nordic Village, Inc. (In re Nordic Village, Inc.)*, 915 F.2d 1049 (6th Cir. 1990), *rev'd on other grounds*, 503 U.S. 30 (1992) stated that "[t]he requirement of 'knowledge is satisfied if the transferee 'knew of facts that would lead a reasonable person to believe that the property transferred was recoverable.'" *Id.,* 915 F.2d at 1055 (citation omitted).

Taken together, the cases addressing "good faith" and "knowledge" under § 550(b)(1) of the Bankruptcy Code make it clear that there is no straightforward

10

definition of "good faith" or "knowledge of voidability", and that the two concepts overlap.

The Trustee does not argue that the receipt of its attorney fee by the Law Firm Defendant from the Genna Defendants was not a good faith transfer.  Rather, the Trustee focuses solely on the requirement that an immediate transferee take the transfer "without knowledge of the voidability of the transfer avoided."  The Trustee argues that knowledge by the immediate transferee of a possible bankruptcy is sufficient to establish that the immediate transferee had knowledge of the avoidability of the transfer.  The Trustee cites to a few cases where the courts suggest that knowledge of a potential bankruptcy filing is sufficient knowledge to require an immediate transferee to return funds to the estate under 11 U.S.C. § 550(b)(1).  *See Grove Peacock Plaza, Ltd, v. Resolution Trust Corporation (In re Grove Peacock Plaza, Ltd.),* 142 B.R. 506 (Bankr. S.D. Fla. 1992); *SKK Liquidation Trust v. Green & Green, LPA (In re Spinnaker Industries, Inc.),* 328 B.R. 755 ( Bankr. S.D. Ohio 2005) and *Lifecare Technologies, Inc. v. Berman Law Firm, P.A. (In re Lifecare Technologies, Inc.),* 305 B.R. 88 (Bankr. M.D. Fla. 2003).

This Court finds these cases problematic as support for the proposition that an immediate transferee is liable to the bankruptcy estate merely because he or she had knowledge of a potential bankruptcy.  None of these cases actually reach that conclusion with regard to the specific immediate transferee in the case.  In *Grove Peacock Plaza, Ltd, v. Resolution Trust Corporation (In re Grove Peacock Plaza, Ltd.),* 142 B.R. 506 (Bankr. S.D. Fla. 1992), the issue was whether the defendant Resolution Trust Corp. was an initial transferee or an immediate transferee under 11 U.S.C.

§ 550(a). The court determined that defendant Resolution Trust Corp. was an initial transferee under 11 U.S.C. § 550(a)(1). To the extent that the court made any statements about immediate transferees, those statements were dicta and cannot be used to analyze how the Court would have ruled had there actually been any immediate transferee involved in the case.

In *SKK Liquidation Trust v. Green & Green, LPA (n re Spinnaker Industries, Inc.),* 328 B.R. 755 (Bankr. S.D. Ohio 2005) debtor's successor brought a preference action to recover funds paid to a judgment creditor and to the judgment creditor's attorney as an attorney fee. The court found that the judgment creditor was the initial transferee and funds paid to the creditor were recoverable as a preferential payment. The court also held that the law firm defendant was an immediate transferee of the judgment creditor with regard to its attorney fees. The court then went on to discuss the "good faith" and "without knowledge" requirements of 11 U.S.C. § 550(b)(1) and concluded that it could not, on the record before it, determine whether the law firm could be held liable as an immediate transferee under 11 U.S.C. § 550(b)(1). The court remanded the issue for a determination as to whether the law firm could be held liable under 11 U.S.C. § 550(b)(1). The court did not address what knowledge the court would have required the immediate transferee to possess to lose its protection under 11 U.S.C. § 550(b)(1).

In *Lifecare Technologies, Inc. v. Berman Law Firm, P.A. (In re Lifecare Technologies, Inc.),* 305 B.R. 88 (Bankr. M.D. Fla. 2003), the Chapter 11 debtor sought recovery of prepetition settlement payments the debtor made to a creditor and the payments the creditor had paid to its law firm for an attorney fee. The court held that

12

the law firm defendant was an immediate transferee under 11 U.S.C. § 550(a)(1). However, the law firm defendants had filed an affidavit stating that they had no knowledge of a possible bankruptcy when it accepted a payment from the Chapter 11 debtor's creditor. The court was satisfied that the affidavit established that the law firm took funds from the initial transferee "without knowledge". The court did not opine on whether knowledge of the bankruptcy would have been sufficient in of itself to constitute knowledge for purposes of avoiding the transfer to the immediate transferee.

Given the lack of clarity on what the term "without knowledge of the voidability of the transfer avoided" means, this Court holds that on the facts of this case, knowledge of the potential bankruptcy is insufficient to defeat the Law Firm Defendant's defense under 11 U.S.C. § 550(b)(1). Neither the language of the statute itself nor the legislative history requires a different result. The statute says:

> The trustee may not recover under section (a)(2) of this section from a transferee that takes for value, including satisfaction or securing of a present or antecedent debt in good faith, and without knowledge of the voidability of the transfer avoided.

The statute does not say an immediate transferee is liable if they have knowledge of a bankruptcy. It says they are liable if they have knowledge of the voidability of the transfer. Congress, in drafting the statute, could easily have substituted the word "bankruptcy" for the phrase "voidability of the transfer avoided" had it intended mere knowledge of a potential bankruptcy filing to defeat an immediate transferee's defense. This Court refuses to infer that simply because the Law Firm Defendant was aware that a bankruptcy might be filed, it understood the nature of the potential avoidance action a potential trustee could have against the Genna Defendants. Even assuming the Law

13

Firm Defendant understood the implications of a potential bankruptcy, that understanding is not sufficient knowledge to hold the Law Firm Defendant liable to the Trustee under § 550(b)(1).  The case law and the legislative history strongly suggest that the Trustee's ability to recover from an immediate transferee, that is a creditor of a creditor, who is paid in good faith, is intended to be very limited.  For an immediate transferee to be found to have "knowledge of the voidability of the transfer avoided", the degree of knowledge has to be something more than mere knowledge of a potential bankruptcy.

The legislative history and the case law set out two scenarios where an immediate transferee might be held liable to the bankruptcy estate.  The first of these scenarios is explained by Congress in the legislative history of 11 U.S.C. § 550(b)(1):

> The phrase "good faith" in [§ 550(b)] is intended to prevent a transferee from whom the trustee could recover from transferring the recoverable property to an innocent transferee, and receive a transfer from him, that is, "washing" the transaction through an innocent third party.  In order for the transferee to be excepted from liability ... he himself my be a good faith transferee.

See Bonded Financial Services, Inc. v. European American Bank, 838, F.2d 890, 897 (7th Cir.)(quoting H.R.Rep No. 95-595, 95th Cong., 2d Sess. 376 (1978); S.Rep. No. 95-989, 95th Cong., 2d Sess. 90(1978), 1978 U.S.C.C.A.N. 5787, 5876, 6332).  *See also Eder v. Queen City Grain, Inc. (In re Queen City Grain, Inc.)*, 51 B.R. 722, 727 (Bankr. S. D. Ohio 1985)("for purposes of § 550(b)(1), the legislative intent was limited to closing the door on attempts to immunize a questionable transaction through the involvement of a third party).

Thus the first scenario where a trustee may recover from an immediate

14

transferee is when the initial transferee knows that it has received a potentially avoidable transfer and gives the property it received to a third party to protect or hide the property from recovery by the trustee. The second scenario where courts and the legislative history find that the immediate transferee is liable to the estate is when the transfer between the debtor and the initial transferee is tainted by fraud and the subsequent transferee could have discovered the fraud through reasonable investigation. As the court stated in *Brown v. Third National Bank (In re Sherman),* 67 F.3d 1348 (8th Cir. 1995):

> We believe that a transferee has knowledge if he "knew facts that would lead a reasonable person to believe that the property transferred was recoverable." (Citations omitted.) In this vein, some facts suggest the underlying presence of other facts. If a transferee possess knowledge of facts that suggest [the initial] transfer may be fraudulent, and further inquiry by the transferee would reveal facts sufficient to alert him that the property is recoverable, he cannot sit on his heels, thereby preventing a finding that he has knowledge. In such a situation, the transferee is held to have knowledge of the voidability of the transfer. *In re Agricultural Research & Technology Group,* 916 F.2d at 536; *Bonded Fin. Servs.,* 838 F.2d at 898; *In re Goodwin,* 115 B.R. 674, 677 (Bankr. C.D.Cal. 1990).

Thus, as a general rule, an immediate transferee may not avail itself of the defense under 11 U.S.C. § 550(b)(1) if the initial transferee is giving funds to the immediate transferee to hide or shield those funds from recovery, or if the transferee, through reasonable discovery, could determine that the initial transfer was tainted by fraud.

Neither of those circumstances exist in the instant case. The Genna Defendants did not transfer the garnishment proceeds to the Law Firm Defendant to attempt to shield the money from recovery by other creditors of the debtor or by a subsequent Chapter 7 trustee; the Genna Defendants paid over the funds pursuant to a court order. Presumably had the Genna Defendants not paid the attorney fee on the money

15

recovered by the Genna Defendants, the Law Firm Defendant could have sought enforcement of the order granting them their fees in state court.  There is also no allegation by the Trustee that the Debtor paid the Genna Defendants either because the Debtor preferred the Genna Defendants to its other creditors, or was paying the Genna Defendants in order to hide Debtor's assets from Debtor's other creditors.  The Genna Defendants are a judgment creditor of the Debtor and as a judgment creditor, they garnished funds belonging to the Debtor.  The e-mail exchange between the Law Firm Defendant and Debtor's bankruptcy attorney clearly indicates that the reason Debtor was thinking of filing bankruptcy was to prevent further attempts at collection by Genna Defendants.  This is not a case where Debtor was contemplating bankruptcy and transferred assets to keep those assets out of the bankruptcy estate.  The Genna Defendants are not the beneficiaries of a fraudulent transfer; they are the blameless recipients of a preferential transfer.  When the Law Firm Defendant was paid its fee pursuant to the state court order, it was not participating in the kind of activity which defeats its defense as an immediate transferee.

Based on the legislative history of 11 U.S.C. § 550 and the case law, the Court concludes that on these facts, knowledge of a possible bankruptcy does not defeat the Law Firm Defendant's defense under 11 U.S.C. § 550(b)(1).  The Court finds that the Law Firm Defendant is an immediate transferee under 11 U.S.C. § 550(a)(2).  However, as a transferee that received its attorney fee for value, in good faith, and without knowledge of the voidability of the transfer avoided, the Trustee may not avoid the payment by the Genna Defendants of the attorney fee to the Law Firm Defendant.  Therefore, the Law Firm Defendant is granted summary judgment as to Count III of the
16

Complaint and Count III of the Complaint is dismissed.

## C. 11 U.S.C. § 502

Count IV of the Trustee's Complaint requests that the Court disallow any claim of an entity from which property is recoverable under 11 U.S.C. § 550. The Court has granted judgment against the Genna Defendants and that judgment is recoverable under 11 U.S.C. § 550. Until the Genna Defendants satisfy the judgment, any claim the Genna Defendants have against the estate is disallowed. The Trustee's request for relief under 11 U.S.C. § 502(d) as to the Genna Defendants is granted. With regard to the Law Firm Defendant, the Court has held that the Law Firm Defendant has no liability to the estate. Therefore, the Trustee's request for relief against the Law Firm Defendant is denied. However, the Court notes that any additional recovery of attorney fees by the Law Firm Defendant is not a claim against the estate. Any additional attorney fees must be recovered from any additional recovery by the Genna Defendants on their judgment against Debtor.

## VI. Conclusion

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is granted on Counts I and II of the Complaint. Plaintiff is awarded judgment against the Genna Defendants in the amount of $168,559.38. Defendant Law Firm's Motion for Summary Judgment is granted on Count III of the Complaint. Count III is, therefore, dismissed. Count IV of the Complaint is granted in part and denied in part.

**Signed on March 26, 2010**

                                                  /s/ Marci B. McIvor
                                                    Marci B. McIvor
                                                    United States Bankruptcy Judge